UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:

JOEL VILLAR, PRIMITIVO MARTINEZ,    :    14 Civ. 8211 (RA)(JCF)
JUAN CARLS FLORES, EDWIN SANCHEZ,   :
RENE PERALTA, EDGAR CAZAREZ, and    :         REPORT AND
LISA BROWN, on behalf of            :         RECOMMENDATION
themselves and others similarly     :
situated,                           :
                                    :
              Plaintiffs,           :
                                    :
       - against -                  :
                                    :
PRANA HOSPITALITY, INC. and RAJIV   :
SHARMA,                             :
                                    :
              Defendants.           :
- - - - - - - - - - - - - - - - - - - -:

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/11/17

TO THE HONORABLE RONNIE ABRAMS, U.S.D.J.:

The plaintiffs in this wage-and-hour action seek compensatory

damages, liquidated damages, and statutory penalties from

defendants Prana Hospitality, Inc., and Rajiv Sharma for alleged

violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et

seq. (the "FLSA"), and New York Labor Law, N.Y. Lab. Law § 650 et.

seq. (the "NYLL").[1] After default judgments were entered against

the defendants, the Honorable Ronnie Abrams, U.S.D.J., referred

the action to me for an inquest. The defendants did not appear

at the hearing, and the following facts are therefore based on

---

[1] The plaintiffs are named plaintiffs Joel Villar, Primitivo
Martinez, Juan Carlos Flores, Edwin Sanchez, Rene Peralta, Edgar
Cazarez, and Lisa Brown, as well as opt-in plaintiffs Marelene
Melendez, Nicole Yochum, Natalie Desposati, Gererdo Mejia, and
Omar Atenco.

1

allegations and evidence provided by the plaintiff. I recommend awarding the plaintiffs' damages and penalties in the amount of $402,215.18, and attorneys' fees and costs in the amount of $107,749.00.

<u>Background</u>

The plaintiffs are former bartenders, bar backs, porters, and food runners at a restaurant, Pranna, operated by Prana Hospitality and Mr. Sharma. (Complaint, ¶¶ 6, 11, 21, 26, 29, 39, 43, 55; Declaration of Steven Seltzer dated Feb. 3, 2017 ("Seltzer Decl."), ¶ 2; Declaration of Joel Villar dated Dec. 20, 2016 ("Villar Decl."), ¶¶ 4-6; Declaration of Primitivo Martinez dated Dec. 20, 2016 ("Martinez Decl."), ¶¶ 4-7; Declaration of Juan Carlos Flores dated Dec. 20, 2016 ("Flores Decl."), ¶¶ 4-7; Declaration of Edwin Sanchez dated Jan. 31, 2017 ("Sanchez Decl."), ¶¶ 4-7; Declaration of Rene Peralta dated Dec. 20, 2016 ("Peralta Decl."), ¶¶ 4-7; Declaration of Edgar Cazarez dated Dec. 20, 2016 ("Cazarez Decl."), ¶¶ 4-7; Declaration of Lisa Brown dated Dec. 23, 2016 ("Brown Decl."), ¶ 4-5; Declaration of Marlene Melendez dated Jan. 26, 2017 ("Melendez Decl."), ¶¶ 4-6; Declaration of Nicole Yochum dated Jan. 26, 2017 ("Yochum Decl."), ¶¶ 4-6; Declaration of Natalie Desposati dated Jan. 31, 2017 ("Desposati Decl."), ¶¶ 4-7; Declaration of Gerardo Mejia dated Dec. 28, 2017 ("Mejia Decl."), ¶¶ 4-7; Declaration of Omar Atenco dated Dec. 20, 2016 ("Atenco

Decl."), ¶¶ 4-7).  Each plaintiff worked at the restaurant for some period between October 2008 and March 2015.  (Villar Decl., ¶ 4 (Aug. 2012 to Oct. 2014); Martinez Decl., ¶ 4 (Sept. 2010 to Dec. 2013); Flores Decl., ¶ 4 (Nov. 2008 to March 2015); Sanchez Decl., ¶ 4 (Feb. 2012 to June 2014); Peralta Decl., ¶ 4 (Oct. 2008 to May 2014); Cazarez Decl., ¶ 4 (March 2012 to March 2014); Brown Decl., ¶ 4 (Oct. 2011 to May 2014); Melendez Decl., ¶ 4 (Sept. 2012 to Feb. 2014); Yochum Decl., ¶ 4 (Feb. 2013 to Jan. 2014); Desposati Decl. ¶ 4 (Dec. 3, 2013, to June 29, 2014); Mejia Decl., ¶ 4 (Oct. 2012 to Nov. 2014); Atenco Decl., ¶ 4 (Aug. 2009 to Feb. 2013)).[2]  Each plaintiff alleges that the defendants violated the FLSA and NYLL in some or all of the following ways:

1. failure to pay the proper minimum wage for hours worked up to forty per week,

2. failure to pay the agreed-upon wage for certain hours worked,

3. failure to pay time-and-a-half for hours worked over forty per week,

4. failure to pay a spread-of-hours premium for hours worked over ten per day, and

5. failure to provide wage statements in compliance with the NYLL.

(Villar Damages Calculation ("Villar Calc."), attached as an

---

[2] Each of the plaintiffs' declarations is attached as an exhibit to the Seltzer Declaration.

exhibit to Villar Decl.; Martinez Damages Calculation ("Martinez Calc."), attached as Exh. to Martinez Decl.; Flores Damages Calculation ("Flores Calc."), attached as Exh. to Flores Decl.; Sanchez Damages Calculation ("Sanchez Calc."), attached as Exh. to Sanchez Decl.; Peralta Damages Calculation ("Peralta Calc."), attached as Exh. to Peralta Decl.; Cazarez Damages Calculation ("Cazarez Calc."), attached as Exh. to Cazarez Decl.; Brown Damages Calculation ("Brown Calc."), attached as Exh. to Brown Decl.; Melendez Damages Calculation ("Melendez Calc."), attached as Exh. to Melendez Decl.; Yochum Damages Calculation ("Yochum Calc."), attached as Exh. to Yochum Decl.; Desposati Damages Calculation ("Desposati Calc."), attached as Exh. to Desposati Decl.; Mejia Damages Calculation ("Mejia Calc."), attached as Exh. to Mejia Decl.; Atenco Damages Calculation ("Atenco Calc."), attached as Exh. to Atenco Decl.).[3]  In addition, both the Complaint and each plaintiff individually alleges that the defendants' violations were willful.  (Complaint, ¶¶ 115, 121, 132, 140, 148, 152, 164;

---

[3] The documents detailing the calculation of each plaintiffs' damages indicate that the defendants violated NYLL § 198-d, which requires food-service employers to post in a place easily visible to employees a copy of the statutes and regulations "relating to illegal deductions from wages and tips by employers."  However, neither the Complaint nor any plaintiff's declaration clearly alleges a violation of this provision.  In any case, it does not appear that NYLL § 198-d provides for remedies or penalties against an employer who violates it.  See Chan v. Triple 8 Palace, Inc., No. 03 Civ. 6048, 2006 WL 851749, at *20 (S.D.N.Y. March 30, 2006).

Villar Decl., ¶ 15; Martinez Decl., ¶ 11; Flores Decl., ¶ 11; Sanchez Decl., ¶ 17; Peralta Decl., ¶ 11; Cazarez Decl., ¶ 15; Brown Decl., ¶ 11; Melendez Decl., ¶ 12; Yochum Decl., ¶ 11; Desposati Decl., ¶ 14; Mejia Decl., ¶ 15; Atenco Decl., ¶ 12).

Discussion

A.  Legal Standards

Where a defendant has defaulted, all of the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); Keystone Global LLC v. Auto Essentials, Inc., 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015).  The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiffs.  See, e.g., Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993).  Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed."  Jemine v. Dennis, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012).  Once liability has been established, the plaintiff must provide evidence establishing the amount of damages with reasonable certainty.  Transatlantic Marine Claims Agency, 109 F.3d at 111.

B.  Liability

1.  Prerequisites for Coverage Under FLSA and NYLL

The complaint alleges that Prana Hospitality engaged in interstate commerce and had "annual gross volume of [sales made or business done] not less than $500,000." (Complaint, ¶¶ 100-101). It further alleges that Mr. Sharma had control over employment practices at the restaurant. (Complaint, ¶¶ 102-106). Prana Hospitality is therefore an "enterprise engaged in commerce" under the FLSA, and Mr. Sharma qualifies as an "employer" under both the FLSA and the NYLL. 29 U.S.C. §§ 203(d), 203(r)(1), 203(s)(1)(A)(i)-(ii); NYLL §§ 198, 651; Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." (internal citation omitted)); Sethi v. Narod, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of "employer" under the [NYLL] coextensively with the definition used by the FLSA.'" (quoting Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010))). As noted, the plaintiffs allege that they worked at the restaurant operated by the defendants. Thus, the prerequisites for coverage under both the FLSA and NYLL are met.

## 2. Statute of Limitations

The statute of limitations is six years for claims under the NYLL and three years for claims under the FLSA if a defendant's acts are willful. 29 U.S.C. § 255(a); NYLL § 663(3); Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777, 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012). As noted, the Complaint, filed on October 14, 2014, properly pleads willfulness, and each plaintiff has similarly alleged that the defendants' violations were willful. Therefore, the plaintiffs may recover under the FLSA for violations occurring after October 14, 2011, and under the NYLL for violations occurring after October 14, 2008.

## 3. Unpaid Minimum Wage

Both state and federal law mandate that employees be paid at least a minimum hourly rate.[4] 29 U.S.C. § 206(a)(1); N.Y. Comp.

---

[4] Although "[b]oth the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage," this "tip credit" is available only if certain notice requirements are met. Inclan v. New York Hospitality Group, Inc., 95 F. Supp. 3d 490, 497-98 (S.D.N.Y. 2015) (citing 29 U.S.C. §§ 203(m), 206(a)(1), and 12 NYCRR §§ 146-1.3(b), 146-2.2). A number of plaintiffs allege that they were not informed of the tip credit. (Sanchez Decl., ¶ 14; Cazarez Decl., ¶ 12; Brown Decl., ¶ 8; Melendez Decl., ¶ 9; Yochum Decl., ¶ 7; Desposati Decl., ¶ 11; Mejia Decl., ¶ 12). In any case, it is the employers' burden to show that they have complied with the notice requirements. Inclan, 95 F. Supp. 3d at 497. Prana Hospitality and Mr. Sharma have failed to do so here, so they could not take advantage of the tip credit even without these allegations.

Codes R. & Regs. tit. 12 ("12 NYCRR"), § 146-1.2.  "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages."  Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (internal citation omitted), report and recommendation adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).   In the period at issue -- October 14, 2008, to March 31, 2015 -- the higher of the two minimum wages rose periodically, from $7.15 per hour from October 14, 2008, to July 23, 2009,[5] see id.; see also 29 U.S.C. § 206(a)(1); NYLL § 652(1); to $7.25 per hour from July 24, 2009 to December 30, 2013, see Wicaksono, 2011 WL 2022644, at *3; see also 29 U.S.C. § 206(a)(1); NYLL § 652(1); to $8.00 per hour from December 31, 2013 to December 30, 2014, see 29 U.S.C. § 206(a)(1); NYLL § 652(1); and finally to $8.75 per hour from December 31, 2014, to March 31, 2015, see 29 U.S.C. § 206(a)(1); NYLL § 652(1).  Eight of the plaintiffs -- Mr. Sanchez, Mr. Peralta, Mr. Cazarez, Ms. Melendez, Ms. Yochum, Ms. Desposati, Mr. Mejia, and Mr. Atenco -- allege that they were paid less than the required minimum wage.  (Sanchez Decl., ¶ 14; Sanchez Calc.; Peralta Decl., ¶ 8; Peralta Calc.;

---

[5] The plaintiffs' damages calculations incorrectly identify the applicable minimum wage rate during this period as $7.25 per hour.

Cazarez Decl., ¶¶ 9-10; Cazarez Calc.; Melendez Decl., ¶ 9; Melendez Calc.; Yochum Decl., ¶ 7; Yochum Calc.; Desposati Decl., ¶ 11; Desposati Calc.; Mejia Decl., ¶¶ 9-10, 12; Mejia Calc.; Atenco Decl., ¶ 8; Atenco Calc.).

### 4. Unpaid Agreed-Upon Wage

The FLSA allows recovery for unpaid "straight" time only up to the minimum wage rate. Kernes v. Global Structures, LLC, No. 15 Civ. 659, 2016 WL 880199, at *3 (S.D.N.Y. March 1, 2016). The NYLL provides, on the other hand, for a claim of straight time at a rate higher than the minimum wage if the parties previously agreed to the rate, and courts have awarded straight time rates higher than the minimum wage under a variety of NYLL sections. See, e.g., id. (NYLL § 198(3)); Armata v. Unique Cleaning Services, LLC, No. 13 CV 3625, 2015 WL 12645527, at *5 (E.D.N.Y. Aug. 27, 2015) (NYLL § 198(3)); Hernandez v. NJK Contractors, Inc., No. 09 CV 4812, 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) (NYLL §§ 191(1), 198(3)); Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (NYLL § 198(3)); Wing Kwong Ho v. Target Construction of NY, Corp., No. 08 CV 4750, 2011 WL 1131510, at *14 (E.D.N.Y. March 28, 2011) (NYLL § 191(1)); Epelbaum v. Nefesh Achath B'Yisrael, Inc., 237 A.D.2d 327, 330, 654 N.Y.S.2d 812, 814 (2d Dep't 1997) (NYLL §§ 191, 198); but see Myers v. Hertz Corp., 624 F.3d 537, 545 n.1 (2d Cir. 2010) ("New York courts have

suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute . . . ."); <u>McGlone v. Contract Callers Inc.</u>, 114 F. Supp. 3d 172, 173 (S.D.N.Y. 2015) (declining to hold that NYLL § 663(1) allows claims for wage rates higher than minimum wage); <u>Gottlieb v. Kenneth D. Laub & Co.</u>, 82 N.Y.2d 457, 464, 605 N.Y.S.2d 213, 217 (1993) ("[A]ll of the remaining provisions of Labor Law § 198 strongly suggest that the entire section was intended merely to afford procedural rules . . . to apply in actions brought for wage claims created under the substantive provisions of Labor Law article 6."). Here, Mr. Martinez, Ms. Brown, Ms. Melendez, Ms. Yochum, and Ms. Desposati allege that they were not paid an agreed-upon wage that was higher than the minimum wage. (Martinez Decl., ¶ 8; Martinez Calc.; Brown Decl., ¶ 7; Brown Calc.; Melendez Decl., ¶ 8; Melendez Calc; Yochum Decl., ¶ 8; Yochum Calc.; Desposati Decl., ¶ 10; Desposati Calc.).

5. <u>Unpaid Overtime</u>

Both the FLSA and the NYLL provide that a non-exempt employee must be paid one and one-half times their regular rate for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. Mr. Villar, Mr. Cazarez, Mr. Mejia, and Mr. Atenco allege that they were not paid in accordance with these provisions. (Villar Decl., ¶ 11; Villar Calc.; Cazarez Decl., ¶

10; Cazarez Calc.; Mejia Decl., ¶ 10; Mejia Calc.; Atenco Decl.,
¶ 8; Atenco Calc.).

### 6. Unpaid Spread-of-Hours Premium

The "spread-of-hours" provision in the New York regulations
requires an additional hour's pay at the "basic minimum hourly
wage rate" for any day where the employee works in excess of ten
hours.  12 NYCRR § 142-2.4.  Before January 1, 2011, by its plain
language, section 142-2.4(a) required spread-of-hours wages only
for employees who were paid at the minimum wage.  See Espinosa v.
Delgado Travel Agency, Inc., No. 05 Civ. 6917, 2007 WL 656271, at
*2 (S.D.N.Y. March 2, 2007).  Effective January 1, 2011, employers
are required to pay spread-of-hours wages for "all employees in
restaurants and all-year hotels, regardless of a given employee's
regular rate of pay."  12 NYCRR § 146-1.6(d).  Mr. Flores and Mr.
Atenco claim unpaid spread-of-hours premiums for the period before
and the period after January 1, 2011; however, neither of those
plaintiffs was paid at a rate higher than minimum wage.  (Flores
Decl., ¶ 8; Flores Calc.; Atenco Decl., ¶¶ 7-9; Atenco Calc.).
Mr. Villar, Mr. Sanchez, Mr. Cazarez, Ms. Brown, Ms. Desposati,
and Mr. Mejia claim unpaid spread-of-hours premiums for the period
after January 1, 2011.  (Villar Decl., ¶ 12; Villar Calc.; Sanchez
Decl., ¶ 11; Sanchez Calc.; Cazarez Decl., ¶ 11, Cazarez Calc.;
Brown Decl., ¶ 6; Brown Calc.; Desposati Decl., ¶ 9; Desposati

Calc.; Mejia Decl., ¶ 11; Mejia Calc.).

       7.   <u>Liquidated Damages</u>

Both the FLSA and the NYLL provide for liquidated damages. An employer who violates overtime provisions of the FLSA is liable for an amount in liquidated damages equal to the amount owed in compensatory damages. 29 U.S.C. § 216(b); <u>Smith v. Nagai</u>, No. 10 Civ. 8237, 2012 WL 2421740, at *4 (S.D.N.Y. May 15, 2012) ("A defendant found to have violated the FLSA is required to pay the employee an additional amount in liquidated damages equal to the unpaid overtime."), <u>report and recommendation adopted sub nom.</u> <u>Smith v. Saki Restaurant Corp.</u>, 2012 WL 2428929 (S.D.N.Y. June 27, 2012). The same is true under the NYLL for unpaid wages accrued on or after April 9, 2011.[6] NYLL §§ 198(1-a), 663(1); <u>see</u> <u>Garcia v. Giorgio's Brick Oven & Wine Bar</u>, No. 11 Civ. 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), <u>report and recommendation adopted</u>, 2012 WL 3893537

---

[6] In a recent unpublished decision, the Second Circuit stated that liquidated damages should be awarded under the FLSA or the NYLL, but not both. <u>Chowdhury v. Hamza Express Food Corp.</u>, 666 F. App'x 59, 61 (2d Cir. 2016); <u>see also</u> <u>Granados v. Traffic Bar and Resturant</u>, No. 13 Civ. 500, 2016 WL 7410725, at *4 (S.D.N.Y. Dec. 21, 2016). None of the plaintiffs seeks to "stack" liquidated damages here.

(S.D.N.Y. Sept. 7, 2012).  For unpaid wages accrued prior to that date, a successful plaintiff is presumptively entitled to liquidated damages in an amount equal to 25% of unpaid wages.  See Inclan, 95 F. Supp. 3d at 504-05; see also Gold v. New York Life Insurance Co., 730 F.3d 137, 144 (2d Cir. 2013) ("Because there is no support for retroactivity in either the text or the legislative history, we hold that the 2011 amendment is not retroactive.").

### 7.  Wage Statements

The NYLL requires that all wage statements include, among other things, the employee's rate of pay, deductions, allowances, and overtime rate of pay.  NYLL § 195(3).  Each plaintiff alleges that the defendants failed to provide wage statements.  (Villar Decl., ¶ 13; Martinez Decl., ¶ 9; Flores Decl., ¶ 9; Sanchez Decl., ¶ 15; Peralta Decl, ¶ 9; Cazarez Decl., ¶ 13; Brown Decl., ¶ 9; Melendez Decl, ¶ 10; Yochum Decl., ¶ 9; Desposati Decl., ¶ 12; Mejia Decl., ¶ 13; Atenco Decl., ¶ 10.).  When the bulk of these violations took place, the NYLL provided for a statutory penalty of "$100 for each week that [the employee] did not receive a wage statement with his wage payment, up to a statutory maximum of $2,500."  Galicia v. 63-68 Diner Corp., No. 13 CV 3689, 2015 WL 1469279, at *8 & n.14 (E.D.N.Y. March 30, 3015).  The plaintiffs seek penalties at that rate.

C.  **Damages**

1.  **Mr. Villar**

Mr. Villar worked 46.5 hours per week from August 2012 until October 2014.  (Villar Decl., ¶¶ 4, 9).  He was paid $7.43 per hour for those hours.  (Villar Decl., ¶ 10).  He seeks unpaid overtime wages and spread-of-hours premiums, as well as liquidated damages and statutory penalties.

a.  **Unpaid Overtime**

For the period from August 1, 2012, to December 30, 2013 -- a span of approximately 74 weeks -- Mr. Villar asserts that he was due weekly compensation in the amount of $360.69 (<u>i.e.</u>, minimum wage of $7.25/hour x 40 hours = $290.00; overtime wage of $10.875/hour x 6.5 hours = $70.69).  (Villar Calc.).  He was paid $345.49, leaving $15.20 in unpaid weekly overtime compensation, for a total of $1,124.80 (<u>i.e.</u>, $15.20/week x 74 weeks).

For the period from December 31, 2013, until October 31, 2014 -- a span of approximately 44 weeks -- Mr. Villar asserts that he was due weekly compensation in the amount of $398.00 (<u>i.e.</u>, minimum wage of $8.00/hour x 40 hours = $320.00; overtime wage of $12.00/hour x 6.5 hours = $78.00).  (Villar Calc.).  He was paid $345.49, leaving $52.51 in unpaid weekly overtime compensation, for a total of $2,310.44 (<u>i.e.</u>, $52.51 per week x 44 weeks).

b.  Unpaid Spread-of-Hours Premium

On one day of each week, Mr. Villar worked a shift of longer than ten hours.  (Villar Decl., ¶ 9).  For the 74 weeks between August 1, 2012, and December 30, 2013, he should have been paid an additional $536.50 (i.e., minimum wage of $7.25/hour x 1 hour/week x 74 weeks).  For the 44 weeks between December 31, 2013, and October 31, 2014, he should have been paid an additional $352.00 (i.e., minimum wage of $8.00/hour x 1 hour/week x 44 weeks).

c.  Liquidated Damages and Statutory Penalties

Mr. Villar is entitled to liquidated damages in the amount of $4,323.74 (i.e., $1,124.80 + $2,310.44 + $536.50 + $352.00).  In addition, like all of the plaintiffs, Mr. Villar asserts that he was never provided with a proper wage statement.  He is therefore entitled to a penalty of $100.00 for each week he worked, up to a maximum of $2,500.00.  Because he worked for more than 25 weeks, he is entitled to the maximum.

2.  Mr. Martinez

Mr. Martinez worked for the defendants from September 2010 until December 2013.  (Martinez Decl., ¶ 4).  He asserts that on approximately 30 days each year, he worked for two hours at an agreed-upon rate of $15.00 per hour, which the defendants failed to pay.  (Martinez Decl., ¶ 8).  He also seeks liquidated damages and statutory penalties.

a. <u>Unpaid Agreed-Upon Wage</u>

During the period from September 1, 2010, to April 8, 2011, Mr. Martinez performed 28 hours of unpaid work for which the agreed-upon wage was $15.00 per hour. (Martinez Calc.). That amounts to $420.00 in unpaid wages (<u>i.e.</u>, $15.00/hour for 28 hours). During the period from April 9, 2011, to December 30, 2013, Mr. Martinez performed 164 hours of unpaid work for which the agreed-upon wage was $15.00 per hour, amounting to $2,460.00. (Martinez Calc.).

b. <u>Liquidated Damages and Statutory Penalties</u>

As noted above, for unpaid wages accrued before April 9, 2011, the measure of liquidated damages under the NYLL is 25%. Here, that amounts to $105.00 (<u>i.e.</u>, 25% of $420.00). From April 9, 2011, forward, an employee is entitled to liquidated damages in an amount equal to the amount of unpaid wages -- here, $2,460.00. Because Mr. Martinez worked for the defendants for at least 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

3. <u>Mr. Flores</u>

Mr. Flores worked for the defendants from November 2008 until March 2015. (Flores Decl., ¶ 4). He seeks to recover unpaid spread-of-hours premiums, liquidated damages, and statutory penalties.

### a. Unpaid Spread-of-Hours Premium

On one day of each week during his tenure at Pranna, Mr. Flores worked for 17 hours. (Flores Decl., ¶ 7-8). He was not provided spread-of-hours pay for any of these days. For the period from November 1, 2008, to July 23, 2009 -- a period of approximately 38 weeks during which the applicable minimum wage was $7.15 per hour -- Mr. Flores is entitled to an additional $271.70. For the period from July 24, 2009, to April 8, 2011 -- approximately 89 weeks during which minimum wage was $7.25 per hour -- Mr. Flores is entitled to $645.25. For the period from April 9, 2011, to December 30, 2013 -- a period of approximately 142 weeks[7] during which the minimum wage was $7.25 per hour -- Mr. Flores is entitled to an additional $1,029.50. For the period from December 31, 2013, to December 30, 2014 -- a period of 52 weeks during which the applicable minimum wage was $8.00 per hour -- Mr. Flores is entitled to an additional $416.00. And for the period from December 31, 2014, to March 31, 2015 -- a period of approximately 13 weeks during which the applicable minimum wage was $8.75 per hour -- Mr. Flores is entitled to an additional $113.75.

---

[7] The plaintiffs miscalculate this period as 141 weeks. (Flores Calc.).

b.   Liquidated Damages and Statutory Penalties

Mr. Flores' liquidated damages for unpaid wages accrued prior
to April 9, 2011, are 25% of $916.95 (i.e., $271.70 + $645.25), or
$229.24.   For the remainder the period he worked for the
defendants, his liquidated damages amount to $1,559.25 (i.e.,
$1,029.50 + $416.00 + 113.75).   Because Mr. Flores worked for the
defendants for more than 25 weeks, the statutory penalty for the
failure to provide wage statements is $2,500.00.

4.   Mr. Sanchez

Mr. Sanchez worked for the defendants from February 2012,
until June 2014.   (Sanchez Decl., ¶ 4).   For the first year, he
worked 44 hours per week for a weekly salary of $338.00.   (Sanchez
Decl., ¶¶ 8-9).   One day during each of those weeks, he worked for
17 hours.   (Sanchez Decl., ¶¶ 8, 11).   For the remaining
approximately 73 weeks he worked at Pranna, he worked 38 hours per
week, including one shift per week of 11 hours.   (Sanchez Decl.,
¶¶ 12-14).   During this period, he was paid $5.00 per hour.
(Sanchez Decl., ¶ 14).   He seeks recovery of unpaid minimum wages
and spread-of-hours premiums, as well as liquidated damages and
statutory penalties.

a.   Unpaid Minimum Wage

For the period from February 1, 2013, to December 30, 2013,

the minimum wage was $7.25 per hour.[8]  During this period, Mr. Sanchez worked 38 hours per week and was paid at a rate of $5.00 per hour, for a total of $190.00 per week.  (Sanchez Decl., ¶¶ 12, 14; Sanchez Calc.).  Had he been paid at the minimum wage rate, he would have received $275.50 per week. He is therefore due $85.50 per week for this 47 week period, for a total of $4,018.50.

For the period from December 31, 2013, to June 30, 2014, the applicable minimum wage was $8.00 per hour.  Had Mr. Sanchez been paid at that rate, he would have received $304.00 for his 38 hours of work, which is $114.00 more than he was actually paid.  (Sanchez Decl., ¶¶ 12, 14; Sanchez Calc.).  He is therefore owed $2,964.00 for this 26-week period (i.e., $114.00 per week x 26 weeks).

b.  Unpaid Spread-of-Hours Premium

For one day each week during the period from February 1, 2012, to February 1, 2013, Mr. Sanchez worked 17 hours, but was not paid an extra hour at the minimum wage rate of $7.25 per hour.  (Sanchez Decl., ¶¶ 8, 11).  As noted, he was paid a straight wage of $338.00 per week.  He should have been paid a total of $340.75 (i.e., (minimum wage of $7.25/hour for 40 hours = $290/week) + (overtime rate of $10.875/hour for 4 hours per week = $43.50) + spread-of-

---

[8] Mr. Sanchez does not allege he is owed damages for unpaid minimum wage for the period between February 1, 2012, and February 1, 2013.  (Sanchez Calc.).

hours premium of $7.25/week = $7.25)).  He was therefore underpaid by $2.75 per week for this 52 week period, and is due an additional $143.00.  (Sanchez Calc.).

For one day each of the remaining weeks of his time at Pranna Restaurant, he worked 11 hours, but was again not paid a spread-of-hours premium.  (Sanchez Decl. ¶¶ 12-13).  As the minimum wage was $7.25 per hour for the 47 weeks from February 2, 2013 to December 30, 2013, he is due an additional $340.75.  From December 31, 2013 to June 30, 2014, the applicable minimum wage was $8.00 per hour, and Mr. Sanchez is owed $208.00 for this period (i.e., minimum wage of $8.00/hour x 1 hour/week x 26 weeks).

### c.  Liquidated Damages and Statutory Penalties

Mr. Sanchez is due $7,674.25 in liquidated damages (i.e., $4,018.50 + $2,964.00 + $143.00 + $ 340.75 + $208.00).  Because he worked for the defendants for 25 weeks or more, the statutory penalty for the failure to provide wage statements is $2,500.00.

### 5.  Mr. Peralta

Mr. Peralta worked for the defendants from October 2008 until May 2014.  (Peralta Decl., ¶ 4).  He worked 40 hours per week for the entire period he was employed, but was paid for only 16 hours. (Peralta Decl., ¶ 8).  He seeks unpaid minimum wages, as well as liquidated damages and statutory penalties.

a.   <u>Unpaid Minimum Wage</u>

For the period from October 14, 2008, to July 23, 2009, the minimum wage was $7.15 per hour.  Mr. Peralta was not paid for 24 hours of work time each week, for a total of $171.60 per week of unpaid minimum wage.  For this period of approximately 40 weeks, Mr. Peralta is owed $6,864.00 (<u>i.e.</u>, $171.60/week x 40 weeks). From July 24, 2009, to April 8, 2011, the minimum wage was $7.25 per hour.  Again, Mr. Peralta was not paid for 24 hours of work time each week, for a total of $174.00 per week of unpaid minimum wage.  (Peralta Calc.).  For this period of 89 weeks, Mr. Peralta is owed $15,486.00.  From April 9, 2011, to December 30, 2013, the minimum wage was also $7.25 per hour.  For this 142-week period,[9] Mr. Peralta is owed $24,708.00.  For the period from December 31, 2013, to May 31, 2014, the applicable minimum wage was $8.00 per hour.  Mr. Peralta was therefore underpaid by $192.00 (<u>i.e.</u>, $8.00/hour x 24 hours/week).  For this 22-week period, Mr. Peralta is due $4,224.00.

b.   <u>Liquidated Damages and Statutory Penalties</u>

For the period prior to April 9, 2011, Mr. Peralta is due $5,587.50 in liquidated damages (<u>i.e.</u>, 25% of $22,350.00 in unpaid minimum wage).  For the remainder of the time he worked at Pranna,

---

[9] Again, the plaintiffs miscalculate this period as 141 weeks.

21

he is due $28,932.00 in liquidated damages (i.e., $24,708.00 + $4,224.00). Because he worked for the defendants for more than 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

### 6. Mr. Cazarez

Mr. Cazarez worked for the defendants from March 2012 to March 2014. (Cazarez Decl., ¶ 4). He worked 49 hours each week, and two days per week he worked for 13 hours. (Cazarez Decl., ¶¶ 8-9). He was paid $5.00 per hour for 35 hours of this time and was not paid a spread-of-hours premium. (Cazarez Decl., ¶¶ 9, 11). He seeks to recover unpaid minimum wages, overtime, and spread-of-hours premiums, as well as liquidated damages and statutory penalties.

### a. Unpaid Minimum Wage

From March 1, 2012, to December 30, 2013, the minimum wage was $7.25 per hour. Mr. Cazarez was paid $175.00 per week. (Cazarez Calc.). Had he been paid at the minimum wage for 40 hours per week, he would have received $290.00 per week. Therefore, for this 96-week period, he was underpaid by $115 per week, for a total minimum wage underpayment during this period of $11,040.00.

From December 31, 2013, to March 31, 2014, the applicable minimum wage was $8.00 per hour. During this 13-week period, Mr.

Cazarez was paid $175.00 instead of the $320.00 per week he was due at the minimum wage. This is an underpayment of $145.00 per week, for a total of $1,885.00. (Cazarez Calc.).

b.   Unpaid Overtime

From March 1, 2012, to December 30, 2013, Mr. Cazarez should have received $97.88 per week in overtime pay, for a total of $9,396.00 (i.e., overtime rate of $10.875/hour x 9 hours/week overtime x 96 weeks). For the remaining 13 weeks, he should have received $108.00 per week in overtime, for a total of $1,404.00 (i.e., overtime rate of $12.00/hour x 9 hours/week overtime x 13 weeks).[10]

c.   Unpaid Spread-of-Hours Premium

Mr. Cazarez should have been paid two hours per week at the minimum wage rate as a spread-of-hours premium. For the period prior to December 31, 2013, that amounts to $1,392.00 (i.e., minimum wage rate of $7.25/hour x 2 hours/week x 96 weeks). For the remaining 13 weeks, he should have received an additional $208.00 (i.e., minimum wage rate of $8.00/hour x 2 hours/week x 13 weeks). (Cazarez Calc.).

---

[10] The plaintiffs misidentify the overtime rate during this period as $16.00 per hour rather than $12.00 per hour. (Cazarez Calc.).

d. <u>Liquidated Damages and Statutory Penalties</u>

Mr. Cazarez is entitled to liquidated damages in the amount of $25,325.00 (<u>i.e.</u>, $11,040.00 + $1,885.00 + $9,396.00 + $1,404.00 + $1,392.00 + $208.00).[11]  Because he worked for the defendants for at least 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

7. <u>Ms. Brown</u>

Ms. Brown worked for the defendants from October 2011 until May 2014.  (Brown Decl., ¶ 4).  She seeks to recover unpaid agreed-upon wages and spread-of-hours premiums, as well as liquidated damages and statutory penalties.

a. <u>Unpaid Agreed-Upon Wage</u>

On 40 days during her employment at Pranna, the defendants failed to pay Ms. Brown an agreed-upon wage of $25.00 per hour for two hours of work.  (Brown Decl., ¶ 7).  Therefore, she was underpaid by $2,000 (<u>i.e.</u>, agreed-upon rate of $25.00/hour x 2 hours/day x 40 days).

b. <u>Unpaid Spread-of-Hours Premium</u>

On 20 days during her employment at Pranna Restaurant, Ms.

---

[11] There is an addition error in the plaintiffs' calculations of Mr. Cazarez's liquidated damages for the March 2012 through December 2013 period, in addition to the error in identifying the overtime wage rate noted above.  (Cazarez Calc.).

Brown worked more than 10 hours per day, and the defendants failed to pay her an additional hour at the minimum wage rate. (Brown Decl., ¶ 6). She is therefore entitled to an additional $145.00 (i.e., minimum wage rate of $7.25/hour[12] x 1 hour/day x 20 days).

### c.    Liquidated Damages and Statutory Penalties

Ms. Brown's liquidated damages amount to $2,145.00. Because she worked for the defendants for more than 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

### 8.   Ms. Melendez

Ms. Melendez worked for the defendants from September 2012 until February 2014. (Melendez Decl., ¶ 4). She seeks unpaid minimum wages and agreed-upon wages, as well as liquidated damages and statutory penalties.

### a.   Unpaid Minimum Wage

Ms. Melendez worked an average of 23 hours per week during her employment at Pranna Restaurant and was paid $5.00 per hour. (Melendez Decl., ¶¶ 7, 9). That is, during the 69-week period up to and including December 30, 2013,[13] when the minimum wage was

---

[12] Although the minimum wage rose to $8.00 per hour on December 31, 2013, Ms. Brown does not indicate how many of the days on which the defendants improperly withheld a spread-of-hours premium occurred on or after that date. She therefore seeks only $7.25 per hour. (Brown Calc.).

[13] This is a period of 486 days, which amounts to 69.42 weeks. I have rounded that down to 69 weeks, rather than rounding it up

$7.25 per hour, she was paid $115.00 per week rather than $166.75 per week. This deficit of $51.75 per week adds up to an underpayment of $3,570.75. For the nine weeks from December 31, 2013 up to and including February 28, 2014,[14] when the applicable minimum wage was $8.00 per hour, Ms. Melendez was underpaid by $69.00 per week (i.e., (minimum wage of $8.00/hour x 23 hours) - (actual wage of $5.00/hour x 23 hours)). This amounts to $621.00 in underpayment.

b.  Unpaid Agreed-Upon Wage

For approximately 24 days per year, the defendants failed to pay Ms. Melendez an agreed-upon wage of $25.00 per hour for two hours of work. (Melendez Decl., ¶ 8). Although she worked for Pranna Restaurant for 17 months, or approximately 1.42 years, Ms. Melendez seeks payment only for 48 hours that she worked at this agreed-upon rate during the period when the minimum wage was $7.25 per hour. (Melendez Calc.). Forty-eight hours at $25.00 per hour amounts to $1,200.00. Subtracting the $7.25 per hour I have already recommended she be awarded above, she is entitled to an additional $852.00 (i.e., $1,200.00 - (minimum wage of $7.25/hour

---

to 70 weeks, as the plaintiffs have. (Melendez Calc.).

[14] This is a period of 60 days, which equals 8.57 weeks. As has been the practice in this case, I have rounded this up to the nearest whole number -- that is, 9 weeks -- rather than to 8.5 weeks, as the plaintiffs have. (Melendez Calc.).

x 2 hours/day x 24 days)).

###### c. Liquidated Damages and Statutory Penalties

Ms. Melendez is entitled to liquidated damages in the amount of $5,043.75 (i.e. $3,570.75 + $621.00 + $852.00). Because she worked for the defendants for more than 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

###### 9. Ms. Yochum

Ms. Yochum worked for the defendants from February 2013 until January 2014. (Yochum Decl., ¶ 4). She worked an average of 26 hours per week and was paid $5.00 per hour, for a total of $130.00 per week. (Yochum Decl., ¶ 7). She seeks recovery of unpaid minimum wages and agreed-upon wages, as well as liquidated damages and statutory penalties.

###### a. Unpaid Minimum Wage

From February 1, 2013, to December 30, 2013, a period of approximately 48 weeks,[15] the minimum wage was $7.25 per hour. At that rate, Ms. Yochum should have been paid $188.50 per week. Her underpayment therefore adds up to $2,808.00 (i.e., ($188.50/week – $130.00/week) x 48 weeks).[16]

---

[15] This is a period of 333 days, or 47.57 weeks, which I again round to the nearest whole number of 48 rather than to 47.5 as the plaintiffs have. (Yochum Calc.).

[16] Ms. Yochum does not seek to recover any damages for the period from December 31, 2013, to January 31, 2014. (Yochum

27

b.  Unpaid Agreed-Upon Wage

Four to six times per month, the defendants failed to pay Ms. Yochum for 2 hours of time at an agreed-upon rate of $25.00 per hour.  (Yochum Decl., ¶ 8).  Although she worked at Pranna until the end of January 2014, she seeks payment only for the extra hours she worked during calendar year 2013.  (Yochum Calc.).  For these hours during the period up to and including December 31, 2013, Ms. Yochum should have received a total of $2,750.00 (i.e., $25.00/hour x 10 hours/month x 11 months).  Subtracting the $7.25 per hour I have already recommended she be awarded above, she is entitled to an additional $1,952.50 for this period (i.e. $2,750.00 - (minimum wage of $7.25/hour x 10 hours/month x 11 months).

c.  Liquidated Damages and Statutory Penalties

Ms. Yochum is entitled to liquidated damages in the amount of $4,760.50 (i.e., $2,808.00 + $1,952.50).  Because she worked for the defendants for at least 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

10.  Ms. Desposati

Ms. Deposati worked for the defendants from December 3, 2013, until June 29, 2014.  (Desposati Decl., ¶ 4).  She worked an average of 28 hours per week, including two eleven-hour shifts

Calc.).

each week, and was paid $5.00 per hour.  (Desposati Decl., ¶¶ 8-9, 11).  She seeks to recover unpaid minimum wages, agreed-upon wages, and spread-of-hours premiums, as well as liquidated damages and statutory penalties.

### a.  Unpaid Minimum Wage

For the first four weeks of her employment, the minimum wage was $7.25 per hour.  At that rate, Ms. Desposati should have been paid $203.00 per week rather than the $140.00 per week she received.  This amounts to an underpayment of $252.00 (i.e., ($203.00/week - $140.00/week) x 4 weeks).  From December 31, 2013, until June 29, 2014 -- a period of approximately 26 weeks -- the applicable minimum wage was $8.00 per hour.  At that rate Ms. Deposati should have received $224.00 per week, and her underpayment was therefore $2,184.00 (i.e., ($224.00/week - $140/week) x 26 weeks).

### b.  Unpaid Agreed-Upon Wage

For 34 days during her employment with Pranna Restaurant, the defendant failed to pay her for two hours at an agreed-upon rate of $25.00 per hour.  (Desposati Decl., ¶ 10).  Sixty-eight hours at $25.00 per hour adds up to $1,700.00.  Subtracting the $8.00 per hour that I have already recommended she be awarded for the bulk of her time at Pranna Restaurant, she is entitled to an additional $1,156.00 (i.e., $1,700.00 - (minimum wage of

$8.00/hour x 68 hours)).

### c. Unpaid Spread-of-Hours Premium

Ms. Desposati was not paid a spread-of-hours premium. For the first four weeks of her employment, that underpayment totals $58.00 (i.e., spread-of-hours premium at $7.25/day x 2 days/week x 4 weeks). For the remaining 26 weeks, the underpayment totals $416.00 (i.e., spread-of-hours premium at $8.00/day x 2 days/week x 26 weeks).

### d. Liquidated Damages and Statutory Penalties

Ms. Desposati is entitled to liquidated damages in the amount of $4,066.00 (i.e., $252.00 + $2,184.00 + $1,156.00 + $58.00 + $416.00).[17] Because she worked for the defendants for more than 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

### 11. Mr. Mejia

Mr. Mejia worked for the defendants from October 2012 until November 2014. (Mejia Decl., ¶ 4). While he was employed at Pranna Restaurant, Mr. Mejia worked 54 hours per week,[18] including one twelve-hour shift. (Mejia Decl., ¶¶ 8-9). He was paid $5.00

---

[17] The plaintiffs miscalculate this amount as $4,069.00. (Desposati Calc.).

[18] The plaintiffs miscalculate the hours Mr. Mejia worked as 52 hours per week. (Mejia Decl., ¶ 9; Mejia Calc.).

per hour for 35 hours per week.  (Mejia Decl., ¶ 9).  He seeks unpaid minimum wages, overtime, and spread-of-hours premiums, as well as liquidated damages and statutory penalties.

### a.  Unpaid Minimum Wage

For the approximately 65-week period from October 1, 2012, to December 30, 2013, the minimum wage was $7.25 per hour.  At that rate, Mr. Mejia should have been paid $290.00 for 40 hours of work per week rather than the $175.00 per week he received.  The difference of $115.00 per week adds up to $7,475.00 for the 65-week period.

For the approximately 48-week period from December 31, 2013, to November 30, 2014, the applicable minimum wage was $8.00 per hour.  For 40 hours of work per week, Mr. Mejia should have been paid $320.00, for a difference of $145.00 per week.  That amounts to an underpayment of $6,960.00.

### b.  Unpaid Overtime

For the approximately 65-week period from October 1, 2012, to December 30, 2013, the overtime rate was $10.875 per hour.  Mr. Mejia worked 14 hours of overtime each week, for a total of $152.25 per week.  He is therefore owed $9,896.25 in overtime for that period (i.e., overtime rate of $10.875 x 14 hours/week x 65 weeks).

The overtime rate then rose to $12.00 per hour.  For the approximately 48-week period up until November 30, 2014, Mr. Mejia

is owed $8,064.00 (<u>i.e.</u>, overtime rate of $12.00/hour x 14 hours/week x 48 weeks).

c. <u>Unpaid Spread-of-Hours Premium</u>

Once per week, Mr. Mejia worked a shift longer than ten hours; he did not receive a spread-of-hours premium for those days, however. (Mejia Decl., ¶ 11). For the period prior to December 31, 2013, he is owed $471.25 (<u>i.e.</u>, spread-of-hours premium of $7.25/day x 1 day/week x 65 weeks). For the period from December 31, 2013, to November 30, 2014, he is owed $384.00 (<u>i.e.</u>, spread-of-hours premium of $8.00/day x 1 day/week x 48 weeks).

d. <u>Liquidated Damages and Statutory Penalties</u>

Mr. Mejia is entitled to liquidated damages in the amount of $33,250.50 (<u>i.e.</u>, $7,475.00 + $6,960.00 + $9,896.25 + $8,064.00 + $471.25 + $384.00). Because he worked for the defendants for more than 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

12. <u>Mr. Atenco</u>

Mr. Atenco worked for the defendants from August 2009 until February 2013. (Atenco Decl., ¶ 4). He worked 59 hours per week, including two shifts of longer than 10 hours. (Atenco Decl., ¶¶ 7-8). He was paid $5.00 per hour for 35 hours of work each week. (Atenco Decl., ¶ 8). He seeks unpaid minimum wages, overtime, and spread-of-hours premiums, as well as liquidated damages and

statutory penalties.

a.   Unpaid Minimum Wage

For the 88-week period from August 1, 2009, to April 8, 2011,[19] the minimum wage was $7.25 per hour.  At that rate, Mr. Mejia was entitled to $290.00 for 40 hours of work per week, rather than the $175.00 he received.  This amounts to a shortfall of $10,120.00 (i.e., ($290.00/week - $175.00/week) x 88 weeks).  For the 99-week period from April 9, 2011, until February 28, 2013,[20] the minimum wage was also $7.25 per hour.  Again, Mr. Atesco was underpaid by $115.00 per week, for a total of $11,385.00.

b.   Unpaid Overtime

For the period from August 1, 2009, to April 8, 2011, the overtime wage was $10.875 per hour.  Mr. Mejia worked 19 hours of overtime per week, resulting in an underpayment of $18,183.00 (i.e., overtime rate of $10.875/hour x 19 hours/week x 88 weeks). For the period from April 9, 2011, until February 28, 2013, Mr. Mejia was underpaid by $20,455.88 (i.e., $10.875/hour x 19 hours/week x 99 weeks).

---

[19] The plaintiffs miscalculate this period as 190 weeks. (Atenco Calc.).

[20] The plaintiffs miscalculate this period as 89 weeks. (Atenco Calc.).

c.   <u>Unpaid Spread-of-Hours Premium</u>

For the period before April 9, 2011, Mr. Mejia is entitled to an additional $14.50 per week in spread-of-hours premium pay. That amounts to $1,276.00.  For the period from April 9, 2011, to February 28, 2013, he is similarly entitled to an additional $14.50 per week, for a total of $1,435.50.

d.   <u>Liquidated Damages and Statutory Penalties</u>

Mr. Mejia is entitled to liquidated damages in the amount of $7,394.75 (<u>i.e.</u>, 25% of ($10,120.00 + $18,183.00 + $1,276.00) for the period from August 1, 2009, to April 8, 2011.  For the remainder of his tenure at Pranna Restaarant, his liquidated damages total $33,276.38 (<u>i.e.</u>, $11,385.00 + $20,455.88 + $1,435.50).  Because he worked for the defendants for at least 25 weeks, the statutory penalty for the failure to provide wage statements is $2,500.00.

D.   <u>Attorneys' Fees and Costs</u>

1.   <u>Legal Standard</u>

The FLSA and the NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action.  29 U.S.C. § 216(b); NYLL § 198.  "Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively."

Tackie v. Keff Enterprises LLC, No. 14 Civ. 2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014). An award of attorneys' fees should be based on the court's determination of a "presumptively reasonable fee." Sandoval v. Materia Bros. Inc., No. 11 Civ. 4250, 2013 WL 1767748, at *3 (S.D.N.Y. March 5, 2013) (quoting Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, 522 F.3d 182, 189 (2d Cir. 2008)). This fee is calculated by multiplying "a reasonable hourly rate by the reasonable number of hours expended on the case." Id.; see Millea v. Metro-North Railroad Co., 658 F.3d 154, 166 (2d Cir. 2011).

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel" which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005). The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (quoting Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)); see also Simmons v. New York City Transit Authority, 575 F.3d 170, 174 (2d Cir. 2009). The relevant

community in this case is the Southern District of New York.  Arbor Hill, 522 F.3d at 190.

After establishing the appropriate hourly rate, a court must determine how much time was reasonably expended in order to arrive at the presumptively reasonable fee.  "The relevant issue [] is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); accord Mugavero v. Arms Acres, Inc., No. 03 Civ. 5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010).  A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); accord Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.").  It can do so by making specific deductions or "by making an across-the-board reduction in the amount of hours." Luciano, 109 F.3d at 117; accord Vorcom Internet Services, Inc. v. L&H Engineering & Design LLC, No. 12 Civ. 2049, 2014 WL 116130, at *5 (S.D.N.Y. Jan. 13, 2014).

2.  Reasonable Hourly Rate

The plaintiffs seek fees for five timekeepers: attorneys

36

Steven Seltzer, Jeffrey Risman, and Paul Sagar, and paralegals Sammi Li and Patrick Lee.

Mr. Seltzer is currently a shareholder of the Seltzer Law Group, P.C., "a firm that practices heavily in the areas of employment law and wage and hour litigation," and was previously a shareholder in Yuen Roccanova Seltzer & Sverd P.C. (Seltzer Decl., ¶¶ 42, 46). He graduated from law school in 1999 and has been a member of the New York State bar since 2000. (Seltzer Decl., ¶ 44). He seeks approval of an hourly rate of $400.00. (Seltzer Decl., ¶ 50).

Mr. Risman is a partner and principal of Risman & Risman, P.C., a firm that focuses on "plaintiff-side employment law and civil rights litigation." (Seltzer Decl., ¶ 32). He graduated from law school in 2007 and was admitted to practice in New York in 2008. (Seltzer Decl., ¶¶ 34-35). He has practiced employment law exclusively since 2011. (Seltzer Decl., ¶ 33). He seeks approval of an hourly rate of $350.00. (Seltzer Decl., ¶ 41).

Mr. Sagar was admitted to practice in New York in 2011. (Seltzer Decl., ¶ 51). From 2012 to 2016, he assisted Mr. Seltzer "on a variety of employment and wage and hour matters," including this one. (Seltzer Decl., ¶¶ 51-52). He seeks approval of an hourly rate of $250.00. (Seltzer Decl., ¶ 53).

Ms. Li recently graduated from law school, and has been

employed as a paralegal since 2010. She charges an hourly rate of $100.00. (Seltzer Decl., ¶ 54). Mr. Lee's hourly rate for paralegal services in $75.00. (Seltzer Decl., ¶ 54).

Each of these rates is within the realm of reasonableness for attorneys and non-attorney professionals in this district. See, e.g., Granados, 2016 WL 7410725, at *7 (recommending approval of hourly rates of $425.00 for partner and $275.00 for associate in wage-and-hour litigation); Soto v. Armstrong Realty Management Corp., No. 15 Civ. 9283, 2016 WL 7396687, at *5 (S.D.N.Y. Dec. 21, 2016) (recommending approval of hourly rates of $450.00 for partner and $125.00 for paralegal).

### 3. Reasonable Time Expenditure

Plaintiffs' attorneys seek a significant award of attorneys' fees: their records reflect work resulting in $122,240.00 in fees (Seltzer Decl., ¶ 57; Time Records from Risman & Risman, Yuan Roccanova Seltzer P.C., and The Seltzer Law Group, P.C. ("Time Records"), attached as Exh. U to Seltzer Decl.). While this might seem exorbitant for a "typical" default where the defendants failed to appear at all, this is not such a situation. Here, the defendants appeared and participated in this case through discovery until defendants' counsel withdrew in May 2016, which necessitated motions for default and, ultimately, this inquest. Nevertheless, a review of the records reveals some excessive time

expenditures and unexplained duplication of work.

For example, the drafting of the complaint cost three attorneys over 40 hours of time. (Time Records at 1-2, 4-6).[21] Each of the three depositions the plaintiffs took was attended by two of the plaintiffs' attorneys -- and two of the three depositions were attended by both of the partners working on the case, Mr. Risman and Mr. Seltzer. (Time Records at 2, 10-11). Mr. Risman and Mr. Seltzer collectively spent over 60 hours on the inquest submissions. (Time Records at 3, 13-14). Curiously, they each worked on the inquest on exactly the same seven (largely non-consecutive) days and spent _exactly_ _the_ _same_ _amount_ _of_ _time_ drafting those submissions on five of those seven days: November 30, 2016 (3.6 hours); December 5, 2016 (3.8 hours); January 26, 2017 (2.9 hours); January 27, 2017 (4.3 hours); and February 1, 2017 (5.1 hours). (Time Records at 3, 13-14). On February 2, 2017, the two together worked for 16 hours on the inquest papers; on February 3, 2017, it was 12.5 hours, with Mr. Seltzer edging out Mr. Risman by seven-tenths of an hour over this two-day period. (Time Records at 3, 14). Notwithstanding this investment of time, the damages calculations include more than a few errors. In these

---

[21] Because the Time Records are not paginated, I use the page numbers assigned by the Court's Case Management/Electronic Case Filing system.

circumstances, I recommend reducing the requested fees by 15%, for a total of $103,904.00 (i.e., 85% of $122,240.00).

4.    Costs

The plaintiffs seek recovery of $3,845.87 for filing fees, service of process, translation services, transcripts, and printing expenses. (Seltzer Decl., ¶ 60; Invoices from Risman & Risman, Yuen Roccanova Seltzer, P.C., and The Seltzer Law Group, P.C., attached as Exh. V to Seltzer Decl.). These expenses are all compensable. See, e.g., Siegel v. Bloomberg L.P., No. 13 Civ. 1351, 2016 WL 1211849, at *15 (S.D.N.Y. March 22, 2016); Marquez v. Erenler, Inc., No. 12 Civ. 8580, 2014 WL 5847441, at *4 (S.D.N.Y. Nov. 10, 2014).

Conclusion

For the foregoing reasons, I recommend awarding each plaintiff damages and statutory penalties in the following amounts:

1.    Joel Villar -- $11,147.48

2.    Primitivo Martinez -- $7,945.00

3.    Juan Carlos Flores -- $6,764.69

4.    Edwin Sanchez -- $17,848.50

5.    Rene Peralta -- $88,301.50

6.    Edgar Cazarez -- $53,150.00

7.    Lisa Brown -- $6,790.00

8. Marlene Melendez -- $12,587.50

9. Nicole Yochum -- $12,021.00

10. Natalie Desposati -- $10,632.00

11. Gerardo Mejia -- $69,001.00

12. Omar Atenco -- $106,026.51

I further recommend an award of attorneys' fees and costs in the amount of $107,749.87.

Pursuant to 28 U.S.C. § 636 (b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objection shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Ronnie Abrams, Room 2203, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         April 11, 2017

Copies transmitted this date:

Jeffrey G. Risman, Esq.
Risman & Risman, PC
30 Vesey St., 6th Floor
New York, NY 10007
(via ECF)

Steven Seltzer, Esq.
Paul J. Sagar, Esq.
The Seltzer Law Group PC
11 Broadway, Suite 615
New York, NY 10004
(via ECF)

Prana Hospitality
c/o The Office of the Secretary of State
99 Washington Ave.
Albany, NY 12231
(via U.S. Mail)

Rajiv Sharma
Prana Hospitality
47 Orange Dr.
Jericho, NY 11753
(via U.S. Mail)