```
                                            ┌─────────────────────────────┐
                                            │ USDC SDNY                   │
                                            │ DOCUMENT                    │
                                            │ ELECTRONICALLY FILED        │
                                            │ DOC #:_____     │
                                            │ DATE FILED:_2/4/2019_____   │
                                            └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
:
JOEL VILLAR, PRIMITIVO MARTINEZ,          :      14-cv-8211 (RA) (RWL)
JUAN CARLS FLORES, EDWIN                   :
SANCHEZ, RENE PERALTA, EDGAR               :
CAZAREZ, and LISA BROWN, on behalf         :
of themselves and others similarly         :
situated,                                   :      **REPORT AND**
:      **RECOMMENDATION**
Plaintiffs,        :
:
:
- against -          :
:
:
PRANA HOSPITALITY, INC. and RAJIV          :
SHARMA,                                     :
:
Defendants.        :
-----------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

**TO THE HONORABLE RONNIE ABRAMS, United States District Judge:**

In this wage-and-hour action, Rhiana Hernandez, Tanya Manolcheva, Rabin
Osborne, and Samuel J. Rosenthal (collectively the "Opt-In Plaintiffs") seek
compensatory damages, liquidated damages, and statutory penalties from Prana
Hospitality, Inc. and Rajiv Sharma (collectively "Defendants") for alleged violations of the
Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA") and New York Labor Law
§ 650 et. seq. (the "NYLL"). Defendants defaulted, and the matter has been referred to
the undersigned for an inquest on damages. Following a review of the Opt-In Plaintiffs'
submissions and the record in this matter, I recommend awarding the Opt-In Plaintiffs'
damages and penalties in the amount of $65,396.60, and attorneys' fees in the amount
of $4,175.00, for a total award of $69,571.60.

Procedural Background

The Summons and Complaint were filed on October 14, 2014 by seven initial plaintiffs on behalf of themselves and as representatives of a putative class of similarly situated employees.  (ECF No. 1.)  After Defendant Sharma and Defendant Prana failed to comply with various Court orders, default judgments were issued against them on August 24, 2016.  (ECF Nos. 102,103.)

The matter was then referred to Hon. James C. Francis IV for an inquest.  Neither Defendant Sharma nor Defendant Prana appeared at the inquest hearing.  On April 11, 2017, Judge Francis issued a Report and Recommendation that recommended an award in the amount of $509,969.05 in favor of the initial seven plaintiffs.  (ECF No. 117.)  The Report and Recommendation was adopted in its entirety by the District Court on July 25, 2018.  (ECF No. 118.)

On August 3, 2018, Plaintiffs' counsel wrote to the Court for permission to seek damages on behalf of seven additional opt-in parties.  (ECF No. 119.)  This request was granted on August 6, 2018.  (ECF No. 120.)  The group included the four Opt-In Plaintiffs named herein, as well as three additional identified individuals who apparently did not join this instant application.[1]  On October 9, 2018, to support their application for damages, Opt-In Plaintiffs filed Proposed Supplemental Findings of Fact and Conclusions of Law (hereinafter, "Proposed Findings") and a Declaration of Steven Seltzer (hereinafter, "Seltzer Decl.").  (ECF No. 125.)   Annexed to Selzer's Declaration are the initial

---

[1] The three individuals initially named in counsel's August 3, 2018 letter, but who did not join this instant application, are Chris Golembeski, Adrian Sarmiento, and Deanna DeJesus. (ECF No. 119.)

Complaint; Declarations of each of the four Opt-In Plaintiffs; and a copy of attorneys fee invoices.  (Seltzer Decl., Ex. A-F.)  Defendants were provided with the opportunity to file responses to the Opt-In Plaintiffs' submissions but did not do so.  (ECF No. 124.)

Factual Background

For varying periods of time between 2012 and 2014, each of the four Opt-In Plaintiffs was a server or bartender at Pranna (spelled differently from Defendant Prana), a restaurant located at 79 Madison Avenue, New York, NY 10016 and operated by the Defendants. (Plaintiffs' Supplemental Inquest Memorandum of Law (hereinafter, "Memorandum"), attached as Exhibit 8 to Proposed Findings, at ¶¶ 1-2.)

Generally, all Opt-In Plaintiffs assert that Defendants failed to pay them the minimum wage; failed to pay the required spread of hours payments, as required by NYLL; failed to inform them of the tip credit provision of the FLSA; failed to inform them of the payment of wages listing allowances claimed as minimum wage; failed to provide them with statements identifying the payment of wages and tip credits; and failed to provide them wage notices or any documents that described rates of pay or other information about their employment. (Proposed Findings ¶¶ 4-7; Memorandum at 3-6.)

The Court briefly recounts the specific factual assertions with respect to each of the four Opt-In Plaintiffs below, and then discusses these facts in connection with claimed damages in Section E.[2]

_____

[2] Each of the four Opt-In Plaintiffs has submitted a Declaration in connection with this application. (Seltzer Decl., Ex. B-E.) Following each declaration is a "Damages Summary" for that party.

1. Rhiana Hernandez[3]

   Hernandez worked for Defendants as a server from approximately June 2, 2013 through May 31, 2014.   On average, she worked 35 hours each week during her employment.   Hernandez was paid at an hourly rate of $7.25 for her work as a lunch server and an hourly rate of $5.00 for her work as a dinner and cocktail server.   On approximately two days per month for the entirety of her employment, she was assigned to work parties for the restaurant.   The agreed upon hourly rate of pay for parties was $25.00.

2. Tanya Manolcheva[4]

   Manolcheva worked for Defendants as a server from approximately May 1, 2012, through December 28, 2012.   She worked 38 hours per week for Defendants for 34 weeks.   She worked one shift per week that spanned 11 hours but was not paid an additional hour at the minimum wage rate.   Defendants paid her an hourly wage of $5.00.   On approximately two days per month for the entirety of her employment, Manolcheva was assigned to work parties for the restaurant.   The agreed upon hourly rate of pay for parties was $25.00.   Defendants did not pay Manolcheva for the two hours that she typically spent setting up for, and cleaning up after, each of the parties.

---

[3] Facts drawn from the Declaration of Rhiana Hernandez (hereinafter, "Hernandez Decl."). (Seltzer Decl., Ex. B; *see also* Proposed Findings ¶¶ 16-25.)

[4] Facts drawn from the Declaration of Tanya Manolcheva (hereinafter, Manolcheva Decl."). (Seltzer Decl., Ex. C; *see also* Proposed Findings ¶¶ 27-33.)

3.  Rabin Osborne[5]

Osborne worked for Defendants as a server from approximately January 5, 2014, through September 27, 2014.  She worked 40 hours per week and was paid $5.00 per hour.  On approximately two days per month for the entirety of her employment, Osborne was assigned to work parties for the restaurant.  The agreed upon hourly rate of pay for parties was $25.00.  Defendants did not pay Osborne for the two hours that she typically spent setting up for, and cleaning up after, each of the parties.

4.  Samuel J. Rosenthal[6]

Rosenthal worked for Defendants as a bartender from approximately February 3, 2013 through May 31, 2014.  He worked approximately 30 hours every week, and was paid $5.00 per hour.   On approximately two days per month for the entirety of his employment, Rosenthal was assigned to work parties for the restaurant.   The agreed upon hourly rate of pay for parties was $25.00.  Defendants did not pay Rosenthal for the two hours that he typically spent setting up for, and cleaning up after, each of the parties.

Legal Standard for Default Judgment

Where a defendant has defaulted, all the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.   *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (When a defendant defaults, a trial court is required to "accept all of [the plaintiff's] factual allegations as true and draw all reasonable

---

[5] Facts drawn from the Declaration of Rabin Osborne (hereinafter, "Osborne Decl."). (Seltzer Decl., Ex. D; *see also* Proposed Findings ¶¶ 35-39.)

[6] Facts drawn from the Declaration of Samuel J. Rosenthal (hereinafter, "Rosenthal Decl."). (Seltzer Decl., Ex. E; *see also* Proposed Findings ¶¶ 41-46.)

inferences in its favor."); *Keystone Global LLC v. Auto Essentials, Inc.*, 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015).  The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiffs. *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed."  *Shld, LLC v. Hall*, No. 15 Civ. 6225, 2017 WL 1428864, at *3 (S.D.N.Y. April 20, 2017); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

Once liability has been established, the plaintiff must provide evidence establishing the amount of damages with reasonable certainty.  *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "a plaintiff must . . . substantiate a claim with evidence to prove the extent of damages").  Where, as here, the employer has defaulted, a court should presume the employee's recollection of hours to be correct.  *See, e.g.*, *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002) (The "employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.") (*quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1940), *overruled on other grounds by Slayton v. American Express Co.*, 460 F.3d 215, 226 (2d Cir. 2006); *Cao v. Chandara Corp.*, No. 00 Civ. 8057, 2001 WL 34366628, at *5 (S.D.N.Y. July 25, 2001) (holding that a plaintiff's recollection and estimate of hours worked was presumed to be correct where defendant employer has defaulted).

Liability and Measures of Damages

A.  Prerequisites for Coverage Under FLSA and NYLL

The Complaint alleges that Prana engaged in interstate commerce and had "annual gross volume of [sales made or business done] not less than $500,000." (Complaint, ¶¶ 100-01.)  It further alleges that Sharma had control over employment practices at the restaurant.  (Complaint, ¶¶ 102-06.)  Prana is therefore an "enterprise engaged in commerce" under the FLSA, and Sharma qualifies as an "employer" under both the FLSA and the NYLL.  29 U.S.C. §§ 203(d), 203(r)(1), 203(s)(1)(A)(i)-(ii); NYLL §§ 198, 651; *Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case.") (internal citation omitted)); *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of "employer" under the [NYLL] coextensively with the definition used by the FLSA.'" (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)).

As noted, the Opt-In Plaintiffs allege that they worked at the restaurant operated by the Defendants.  Thus, the prerequisites for coverage under both the FLSA and NYLL are met.

B.  Statute of Limitations

The statute of limitations is six years for claims under the NYLL, and three years for claims under the FLSA if a defendant's acts are willful (and two years if they are not). 29 U.S.C. § 255(a); NYLL § 663(3); *Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777, 2012

WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012) (after no objections, the report and recommendation was adopted on Dec. 14, 2012).

As noted, the Complaint properly pleaded willfulness, and each plaintiff – including, initially, the putative potential plaintiffs – has similarly alleged that the Defendants' violations were willful.  Therefore, the Opt-In Plaintiffs may recover under the FLSA for violations occurring after October 14, 2011, and under the NYLL for violations occurring after October 14, 2008.  As found above, all four Opt-In Plaintiffs worked for Defendants between 2012 and 2014.  Thus, all claims qualify.

## C.  Unpaid Minimum Wage

State and federal law both mandate that employees be paid at least a minimum hourly rate.[7]  29 U.S.C. § 206(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 ("12 NYCRR"), § 146-1.2.  "The federal minimum wage does not preempt the state minimum wage, . . . and a plaintiff may recover under whatever statute provides the highest measure of damages."  *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2022644, at *3 (S.D.N.Y. May 2, 2011), *report and recommendation adopted*, 2011 WL 2038973, at *1 (S.D.N.Y. May 24, 2011).  Although Defendants have defaulted with respect to claims under both statutes, Opt-In Plaintiffs are only entitled to damages under one statute.  *Gamero v.*

---

[7] Although "[b]oth the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage," this "tip credit" is available only if certain notice requirements are met.  *Inclan v. New York Hospitality Group, Inc.*, 95 F. Supp. 3d 490, 497-98 (S.D.N.Y. 2015) (citing 29 U.S.C. §§ 203(m), 206(a)(1), and 12 NYCRR §§ 146-1.3(b), 146-2.2).  All four of the Opt-In Plaintiffs allege that they were not informed of the tip credit.  (Proposed Facts ¶ 4.)  It is the employers' burden to show that they have complied with the notice requirements.  *Inclan*, 95 F. Supp. 3d at 497.  Prana and Sharma have failed to do so here, so they could not take advantage of the tip credit even without these allegations.

*Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) ("[A]n employee 'may not receive a "double recovery" of back wages under both the FLSA and they NYLL.") (quoting *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016)).  The Court has discretion to award Plaintiffs damages under "the statute providing the greatest amount of relief."  *Id.*  As New York's minimum wage was higher than the federal minimum wage during the relevant period, "Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA."  *Hernandez*, 2016 WL 3248493, at *31.  Therefore, the Court will calculate Plaintiffs' recovery based on the difference between the wages Plaintiffs actually received and the New York state minimum wage in effect at the time.

In the period at issue in the Complaint – October 14, 2008, to March 31, 2015 – the higher of the two minimum wages rose periodically, from $7.15 per hour from October 14, 2008, to July 23, 2009; to $7.25 per hour from July 24, 2009 to December 30, 2013; to $8.00 per hour from December 31, 2013 to December 30, 2014; and finally to $8.75 per hour from December 31, 2014, to March 31, 2015.  *See* 29 U.S.C. § 206(a)(1); NYLL § 652(1); *see also Wicaksono*, 2011 WL 2022644, at *3.

All four Opt-In Plaintiffs allege that they were paid less than the required minimum wage.  (Hernandez Decl., ¶ 9; Manolcheva Decl., ¶ 9; Osborne Decl., ¶ 8; Rosenthal Decl., ¶¶ 7-8.)

D. <u>Unpaid Agreed-Upon Wage</u>

The FLSA allows recovery for unpaid 'straight' time only up to the minimum wage rate. *Kernes v. Global Structures, LLC*, No. 15 Civ. 659, 2016 WL 880199, at *3 (S.D.N.Y. March 1, 2016).  NYLL, however, provides for a claim of 'straight' time at a rate higher

than the minimum wage if the parties previously agreed to the rate, and federal courts have awarded straight time rates higher than the minimum wage under the NYLL. *See e.g.*, *Armata v. Unique Cleaning Services, LLC*, No. 13 CV 3625, 2015 WL 12645527, at *5 (E.D.N.Y. Aug. 27, 2015) (NYLL § 198(3)); *Hernandez v. NJK Contractors, Inc.*, No. 09 CV 4812, 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) (NYLL §§ 191(1), 198(3)); *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (NYLL § 198(3)); *Wing Kwong Ho v. Target Construction of NY, Corp.*, No. 08 CV 4750, 2011 WL 1131510, at *14 (E.D.N.Y. March 28, 2011) (NYLL § 191(1)).

Here, the Opt-In Plaintiffs allege that they were paid an agreed-upon wage that was higher than the minimum wage with respect to certain parties for which they provided specific services at a rate of $25.00 per hour. (Hernandez Decl. ¶ 11; Manolcheva Decl. ¶ 11; Osborne Decl. ¶ 10; Rosenthal Decl. ¶ 8.)

E. Unpaid Spread-of-Hours Premium

The 'spread-of-hours' provision in the New York regulations requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the employee works in excess of ten hours. 12 NYCRR § 142-2.4. Before January 1, 2011, section 142-2.4(a) only required spread-of-hours wages for employees who were paid at the minimum wage. *See Espinosa v. Delgado Travel Agency, Inc.*, No. 05 Civ. 6917, 2007 WL 656271, at *2 (S.D.N.Y. March 2, 2007). Effective January 1, 2011, employers are required to pay spread-of-hours wages for "all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay." 12 NYCRR § 146-1.6(d).

The only Opt-In Plaintiff seeking damages for spread-of-hours violations is Tanya Manolcheva, who claims that although she worked 11 hours every Saturday during her

employment, Defendants did not pay her an additional hour of wages.  (Manolcheva Decl. ¶ 12.)  Thus, Manolcheva has a claim for spread-of-hours wages.

F.  Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages.  An employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back-pay, for 100% of the unpaid wages as liquidated damages.  29 U.S.C. § 216(b) ("Any employer who violates the provisions . . . of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").

The NYLL also provides for liquidated damages.  *Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11 Civ. 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid.").  Therefore, Plaintiffs may recover liquidated damages for unpaid wages under either the FLSA or NYLL, whichever provides for a greater recovery.  *Morales v. Mw Bronx, Inc.*, No. 15 Civ. 6296, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).  However, they are not entitled to a double recovery of liquidated damages.  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Here, the Opt-In Plaintiffs all seek liquidated damages. (Proposed Findings ¶¶ 26, 34, 40, and 47.). This amount would be equal to 100% of the amount owed in unpaid wages.

G. Wage Statements

The NYLL requires employers to furnish each employee wage statements that must include, among other things, the employee's rate of pay, deductions, allowances, and overtime rate of pay.  NYLL § 195(3).  When the claimed violations took place, the NYLL provided for a statutory penalty of "one hundred dollars for each work week that the violations occurred or continue to occur," up to a maximum of $2,500, "together with costs and reasonable attorney's fees."  *See Mack v. No Parking Today, Inc.*, No. 16 CV 3986, 2019 WL 337696, at *1 n2, n.4 (E.D.N.Y. Jan. 28, 2019).

Each of the Opt-In Plaintiffs alleges that the Defendants failed to provide them wage statements.  (Hernandez Decl. ¶¶ 12-15; Manolcheva Decl. ¶¶ 13-15; Osborne Decl. ¶¶ 11-14; Rosenthal Decl. ¶¶ 9-11.)  The Opt-In Plaintiffs seek penalties at the applicable statutory rate.

## Damages

The Court addresses below the damages calculations with respect to each Opt-in Plaintiff.

A. Rhiana Hernandez

Plaintiff Hernandez worked 35 hours per week between approximately June 2, 2013 and May 31, 2014.  (Hernandez Decl., ¶¶ 4, 8.)  She was paid an hourly rate of $7.25 for her work as a lunch server, and an hourly rate of $5.00 for her work was a dinner and cocktail server.  (Hernandez Decl., ¶ 9.)  Defendants never informed her that tips

would be credited towards the payment of the minimum wage.  (Hernandez Decl., ¶ 10.)
On approximately two days per month during her employment, she was assigned to work
parties for the restaurant.  (Hernandez Decl., ¶ 11.)  The agreed upon hourly rate of pay
for parties was $25.00.  (Hernandez Decl., ¶ 11.)  However, Defendants did not pay her
for the two hours that she typically spent setting up for, and cleaning up after, each of the
parties.  (Hernandez Decl., ¶ 11.)  During her employment, Defendants never provided
her with wage notices or wage statements.  (Hernandez Decl., ¶¶ 12, 13.)  Hernandez
seeks unpaid overtime wages, as well as liquidated damages and wage notice and wage
statement statutory penalties. For the reasons explained below, Hernandez is entitled to
a total of $12,702.10.

1.  Wage Underpayment

Hernandez worked for the Defendants in both 2013 and 2014 and is entitled to
$2,658.21 in unpaid minimum wage compensation.

In 2013, the operative minimum wage was $8.00 per hour.  Hernandez worked for
Defendants for 30.5 weeks in 2013.  One-third of that time, 10.166 weeks, was spent
working as a lunch server, for which she was paid $7.25 hourly.  One-third of that time,
10.166 weeks, was spent working as a dinner and cocktail server, for which she was paid
$5.00 hourly.  She worked 35 hours per week during her employment.  Thus, her 2013
minimum wage underpayment for lunch server work is equal to $8.00 minus $7.25, which
equals $0.75 per hour times 35 hours times 10.166 weeks, for a total of $266.86.  Her
2013 minimum wage underpayment for dinner and cocktail server work is equal to $8.00
minus $5.00, which equals $3.00 per hour times 35 hours times 10.166 weeks, for a total
of $1,067.43.

In 2014, the operative minimum wage was $8.75 per hour. Hernandez worked for Defendants for 21.5 weeks in 2014. One-third of that time, 7.166 weeks, was spent working as a lunch server, for which she was paid $7.25 hourly. One-third of that time, 7.166 weeks, was spent working as a dinner and cocktail server, for which she was paid $5.00 hourly. Thus, her 2014 minimum wage underpayment for lunch server work is equal to $8.75 minus $7.25, which equals $1.50 per hour times 35 hours times 7.166 weeks, for a total of $376.22. Her 2014 minimum wage underpayment for dinner and cocktail server work is equal to $8.75 minus $5.00, totaling $3.75 per hour times 35 hours times 7.166 weeks, for a total of $940.54.

Adding these amounts together, Hernandez is owed a total of $266.86 plus $1,067.43 plus $376.22 plus $940.54, for a total of $2,651.05 as a result of minimum wage underpayment.[8]

2. Unpaid Party Work

Hernandez is entitled to $1,200.00 in compensation for unpaid party work. She was assigned to work parties for the restaurant approximately two days per month for the entirety of her employment, approximately one year. The agreed upon hourly rate of pay for parties was $25.00. Defendants did not pay her for the two hours that she typically spent setting up for, and cleaning up after, each of the parties. Thus, she was underpaid in the amount of $25 per hour multiplied by 2 hours multiplied by 2 events per month multiplied by 12 months, for a total of $1,200.[9]

---

[8] Opt-In Plaintiffs appear to miscalculate this total as $2,678.21 in their damages chart for Hernandez.

[9] The damages chart provided by Opt-In Plaintiffs lists this amount but does not add it to her total amount owed. In light of the statements made in her Declaration regarding her

3. <u>Liquidated Damages and Statutory Penalties</u>

Hernandez's unpaid wages total $3,851.05.   Accordingly, she is entitled to liquidated damages in the amount of $3,851.05.  In addition, like all of the Opt-In Plaintiffs, Hernandez asserts that she was never provided with a proper wage statement or notice statement, resulting in both a NYLL § 195(1) penalty and a NYLL §195(3) penalty.  For each violation, she is therefore entitled to a penalty of $100.00 for each week she worked, up to a maximum of $2,500.00.  Because she worked for more than 25 weeks, she is entitled to the $5,000 maximum for the two violations combined.  In sum, Hernandez is entitled to liquidated damages and statutory penalties of $8,851.05.

B. <u>Tanya Manolcheva</u>

Plaintiff Manolcheva worked 38 hours per week between approximately May 7, 2012 and December 28, 2012.  (Manolcheva Decl., ¶¶ 4, 9.)  She was paid $5.00 per hour for those hours.  (Manolcheva Decl., ¶ 9.)  Defendants never informed her that tips would be credited towards the payment of the minimum wage.  (Manolcheva Decl., ¶ 10.)  On approximately two days per month during her employment, she was assigned to work parties for the restaurant.  (Manolcheva Decl., ¶ 11.)  The agreed upon hourly rate of pay for parties was $25.00.  (Manolcheva Decl., ¶ 11.)  However, Defendants did not pay her for the two hours that she typically spent setting up for, and cleaning up after, each of the parties.  (Manolcheva Decl., ¶ 11.)  During her employment, Defendants never provided her with wage notices or wage statements. (Manolcheva Decl., ¶¶ 13-14.)  She seeks unpaid overtime wages, unpaid spread-of-hours premiums, unpaid party work

---

unpaid party work, and the applicable law, the Court finds that Hernandez is entitled to $1,200 in addition to the total amount identified on her damages chart.

Case 1:14-cv-08211-RA-RWL   Document 126   Filed 02/04/19   Page 16 of 24

compensation, as well as liquidated damages and wage notice and wage statement statutory penalties.  For the reasons explained below, Manolcheva is entitled to a total of $12,907.

1. Wage Underpayment

Manolcheva is entitled to $2,907.00 in unpaid minimum wage compensation.  In 2012, the minimum wage was $7.25 per hour.  She worked for Defendants for 34 weeks in 2012.  In that period, she worked 38 hours per week and was paid $5.00 per hour.  Thus, the minimum wage underpayment can be calculated as $7.25 minus $5.00, which equals $2.25 per hour, multiplied by 38 hours multiplied by 34 weeks, for a total of $2,907.

2. Unpaid Party Work

Manolcheva is entitled to $1,200.00 in unpaid party work compensation.  She was assigned to work parties for the restaurant approximately two days per month for the entirety of her employment.  The agreed upon hourly rate of pay for parties was $25.00.  Defendants did not pay her for the two hours that she typically spent setting up for, and cleaning up after, each of the parties.  Thus, she was underpaid in the amount of $25 per hour multiplied by 2 hours multiplied by 2 events per month multiplied by 8 months,[10] for a total of $800.

3. Unpaid Spread-of-Hours

Manolcheva is entitled to $246.50 in unpaid spread of hours compensation.  She worked one shift per week that spanned 11 hours but was not paid an additional hour at

---

[10] Plaintiff Manolcheva's damages sheet states she is entitled to this back pay for twelve months.  However, based on her own declaration, she worked for Defendant for approximately 8 months.

the minimum wage rate.  The operative minimum wage at the time was $7.25, multiplied by 1 hour per week for 34 weeks equals $246.50.

### 4.  Liquidated Damages and Statutory Penalties

Manolcheva's unpaid wages total $3,953.50.  Accordingly, Manolcheva is entitled to liquidated damages in the amount of $3,953.50.  In addition, like all of the Opt-In Plaintiffs, she asserts that she was never provided with a proper wage statement or notice statement, resulting in both a NYLL§195(1) penalty and a NYLL §195(3) penalty.  For each violation, she is therefore entitled to a penalty of $100.00 for each week she worked, up to a maximum of $2,500.00.  Because she worked for more than 25 weeks, she is entitled to that $5,000 maximum for the combined penalties.  In sum, she is entitled to liquidated damages and statutory penalties of $8,953.50.

## C.  Rabin Osborne

Plaintiff Osborne worked 40 hours per week between January 5, 2014 and September 27, 2014.  (Osborne Decl., ¶¶ 4, 8.)  She was paid $5.00 per hour for those hours. (Osborne Decl., ¶¶ 4, 8.)  Defendants never informed her that tips would be credited towards the payment of the minimum wage.  (Osborne Decl., ¶ 9.)  On approximately two days per month during her employment, she was assigned to work parties for the restaurant.  (Osborne Decl., ¶ 10.)  The agreed upon hourly rate of pay for parties was $25.00.  (Osborne Decl., ¶ 10.)  However, Defendants did not pay her for the two hours that she typically spent setting up for, and cleaning up after, each of the parties. (Osborne Decl., ¶ 10.)  During her employment, Defendants never provided her with wage notices or wage statements.  (Osborne Decl., ¶¶ 11-12.)  She seeks unpaid overtime wages, unpaid party work compensation, as well as liquidated damages and wage notice

17

and wage statement statutory penalties.  For the reasons explained below, Osborne is entitled to a total of $18,200.

    1.  <u>Wage Underpayment</u>

Osborne is entitled to $5,700.00 in unpaid minimum wage compensation.  In 2014, the minimum wage was $8.75 per hour.  She worked for Defendants for 38 weeks in 2014 for 40 hours per week and was paid $5.00 per hour.  Thus, her minimum wage underpayment is calculated as $8.75 minus $5.00, which equals $3.75 per hour times 40 hours, times 38 weeks, for a total of $5,700.00

    2.  <u>Unpaid Party Work</u>

Osborne is entitled to $1,200.00 in unpaid party work compensation.  She was underpaid in the amount of $25 per hour times 2 hours times 2 events per month times 9 months,[11] for a total of $900.

    3.  <u>Liquidated Damages and Statutory Penalties</u>

Osborne's unpaid wages total $6,600.  Accordingly, Osborne is entitled to liquidated damages in the amount of $6,600.  In addition, like all of the Opt-In Plaintiffs, she asserts that she was never provided with a proper wage statement or notice statement, resulting in both a NYLL § 195(1) penalty and a NYLL § 195(3) penalty.  For each violation, she is therefore entitled to a penalty of $100.00 for each week she worked, up to a maximum of $2,500.00.  Because she worked for more than 25 weeks, she is entitled to that $5,000 maximum for both penalties combined.  In sum, Osborne is entitled to liquidated damages and statutory penalties of $11,600.

---

[11] As with Plaintniff Manolcheva's damages sheet, Plaintiff Osborne's mistakenly states she is entitled to 12 months for unpaid party work when she worked for Defendant for only approximately nine months.

D.  Samuel J. Rosenthal

Plaintiff Rosenthal worked 30 hours per week between approximately February 3, 2013 and May 31, 2014.  (Rosenthal Decl., ¶¶ 4, 7.)  He was paid $5.00 per hour for those hours.  (Rosenthal Decl., ¶¶ 4, 7.)   On approximately two days per month during his employment, he was assigned to work parties for the restaurant.  (Rosenthal Decl., ¶ 8.) The agreed upon hourly rate of pay for parties was $25.00.  (Rosenthal Decl., ¶ 8.) However, Defendants did not pay him for the two hours that he typically spent setting up for, and cleaning up after, each of the parties.  (Rosenthal Decl., ¶ 8.)  During his employment, Defendants never provided him with wage notices or wage statements. (Rosenthal Decl., ¶¶ 9-10.)  He seeks unpaid overtime wages, as well as liquidated damages and wage notice and wage statement statutory penalties.  For the reasons explained below, Rosenthal is entitled to a total of $21,587.50.

1.  Wage Underpayment

Rosenthal worked for the Defendants in both 2013 and 2014 and is entitled to $6,693.75 in unpaid minimum wage compensation.

In 2013, the minimum wage was $8.00 per hour.  He worked for Defendants for 47.5 weeks in 2013 for 30 hours per week and was paid $5.00 hour.  Thus, his 2013 minimum wage underpayment is calculated as $8.00 minus $5.00, which equals $3.00 per hour times 30 hours per week times 47.5 weeks, for a total of $4,275.

In 2014, the minimum wage was $8.75 per hour.  He worked for Defendants for 21.5 weeks in 2014 for 30 hours per week and was paid $5.00 hour.  Thus, his 2014 minimum wage underpayment is calculated as $8.75 minus $5.00, which equals $3.75 per hour times 30 hours per week times 21.5 weeks, for a total of $2,418.75.

2. Unpaid Party Wages

Rosenthal is entitled to $1,600.00 in unpaid party work compensation.  He was underpaid in the amount of $25 per hour times 2 hours times 2 events per month times 16 months,[12] for a total of $1,600.[13]

3. Liquidated Damages and Statutory Penalties

Rosenthal's unpaid wages total $8293.75.  Accordingly, he is entitled to liquidated damages in the amount of $8293.75.  In addition, like all of the Opt-In Plaintiffs, he asserts that he was never provided with a proper wage statement or notice statement, resulting in both a NYLL § 195(1) penalty and a NYLL § 195(3) penalty.  For each violation, he is therefore entitled to a penalty of $100.00 for each week he worked, up to a maximum of $2,500.00.  Because he worked for more than 25 weeks, he is entitled to the $5,000 maximum for both penalites combined.  In sum, Rosental is entitled to liquidated damages and statutory penalties of $13,293.75.

Attorneys' Fees

A. Legal Standard

The FLSA and the NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action.  29 U.S.C. § 216(b); NYLL § 198. "Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate

---

[12] Similar to the original plaintiffs' damages sheets, Plaintiff Rosenthal erroneously states that he is entitled to only 12 months for unpaid party work, when in fact he worked for Defendants for 16 months and did party work during the entirety of his employement. Accordingly, Rosenthal is entitlted to 16 months of unpaid party work.

[13] As with Hernandez, Opt-In Plaintiffs' damages chart lists the unpaid party wages amount but omits it from the tabulation of his total unpaid wages owed.  Unlike with Hernandez, however, it appears that the unpaid party work sum is included in the $20,787.50 total claimed for Rosenthal's damages.

for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively." *Tackie v. Keff Enterprises LLC*, No. 14 Civ. 2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014). An award of attorneys' fees should be based on the court's determination of a "presumptively reasonable fee." *Sandoval v. Materia Bros. Inc.*, No. 11 Civ. 4250, 2013 WL 1767748, at *3 (S.D.N.Y. March 5, 2013) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 189 (2d Cir. 2008)). This fee is calculated by multiplying "a reasonable hourly rate by the reasonable number of hours expended on the case." *Id.*

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (same). Here, the Southern District of New York is the relevant community.

After establishing the appropriate hourly rate, a court must determine how much time was reasonably expended in order to arrive at the presumptively reasonable fee. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney

would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).   A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also*, *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.").

B.  Reasonable Hourly Rate

In support of their application for attorneys' fees, counsel for Opt-In Plaintiffs provides the Declaration of Steven Seltzer.  (*See* Seltzer Decl.)  Seltzer's Declaration outlines the academic and professional qualifications of both Seltzer of The Seltzer Law Group, P.C. and his co-counsel Jeffrey Risman of Risman & Risman, P.C. (Seltzer Decl. ¶¶ 9-30.)

Seltzer graduated from law school in 1999.  (Seltzer Decl., ¶ 20).  He has been practicing in this area of law for approximately 15 years and founded his firm in 2015. (Seltzer Decl., ¶¶ 19, 24).  He seeks fees at an hourly rate of $400.  (Seltzer Decl., ¶ 26).

Risman graduated from law school in 2007.  (Seltzer Decl., ¶ 11).  He has been practicing in this area of law for approximately seven years and founded his firm in 2013. (Seltzer Decl., ¶ 14).  He seeks fees at an hourly rate of $350.  (Seltzer Decl., ¶ 17).  In consideration of the experience and backgrounds of Seltzer and Risman, and taking into account rates paid for similar work in this District, the Court finds their hourly rates to be reasonable.

22

C. Reasonable Time Expenditure

Seltzer and Risman have each submitted invoices in connection with this matter. (Seltzer Decl., Ex. F.)   The attorneys seek $2,600.00 and $1,575.00, respectively. Seltzer's invoice covers time in September 2018, and Risman's invoice covers time in both August 2018 and September 2018.

The work performed is the nature and type that would be expected.   Collectively, the attorneys spent their time communicating with their clients, drafting affidavits, and performing the necessary damage calculations.   The Court has examined the time entries submitted by both law firms in connection with the work performed on this matter, and finds them to be fair and reasonable.

Consequently, the Court recommends the award of attorneys' fees to Jeffrey Risman in the amount of $1,575.00, and attorneys' fees to Steven Seltzer in the amount of $2,600.00, for a total sum of attorneys' fees in the amount of $4,175.00.

## Conclusion

For the foregoing reasons, I recommend awarding each of the Opt-In Plaintiffs damages and statutory penalties in the following amounts:

1. Rhiana Hernandez: $12,702.10.

2. Tanya Manolcheva: $12,907.00.

3. Rabin Osborne: $18,200.00.

4. Samuel J. Rosenthal: $21,587.50.

I further recommend awarding attorneys' fees to Jeffrey Risman in the amount of $1,575.00, and attorneys' fees to Steven Seltzer in the amount of $2,600.00, for a total sum of attorneys' fees in the amount of $4,175.00.

In sum, I recommend a total award to the Opt-In Plaintiffs in the amount of $69,571.60.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Ronnie Abrams, 500 Pearl Street, Room 2203, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 1960, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:        February 4, 2019
              New York, New York